IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

MELISSA WATSON,                     )
                                    )
                    Plaintiff,      )
                                    )
v.                                  )          Case No. 05-2014-JPO
                                    )
THOMAS L. TAYLOR, M.D.,             )
                                    )
                    Defendant.      )

## MEMORANDUM AND ORDER

### I.  Introduction and Background

This is a medical malpractice case.[1]  Following a nine-day trial, the jury returned a verdict in favor of the defendant, Thomas L. Taylor, M.D.  The plaintiff, Melissa Watson, has filed a motion for new trial **(doc. 147)**.  The court has reviewed plaintiff's motion and her supporting memorandum (doc. 155), as well as defendant's memorandum in opposition (doc. 156); plaintiff elected not to file a reply memorandum.  For the reasons explained below, plaintiff's motion for new trial is respectfully denied.

In mid-October 2002, while working as a restaurant waitress, plaintiff suffered an injury that caused her considerable groin pain.  In connection with this work-related injury and plaintiff's potential worker's compensation claim, she was referred by her treating

---

[1]  The court has diversity subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1).  Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, the parties consented to the disposition of this case by U.S. Magistrate Judge James P. O'Hara.  The substantive issues in this case are controlled by Kansas law.  *See* pretrial order (doc. 94) at ¶ 3(d).

physicians to consult with defendant, a board-certified general surgeon with more than thirty years of experience.  In late January 2003, defendant performed  an open surgical procedure (i.e., non-laparoscopic, and under general anaesthesia) to determine if plaintiff actually had a hernia and, if so, to repair the condition.  Significantly, prior to her work-related injury in October 2002, plaintiff had been experiencing chronic pain in the general pelvic region.

As indicated above, the parties agree that if defendant had determined plaintiff did have a hernia, he was supposed to surgically repair the problem.  During the exploratory part of the January 2003 procedure, however, defendant determined plaintiff *did not* have a hernia.  In this regard, some of plaintiff's referring physicians preoperatively had opined, based on their gross physical examinations of plaintiff, a hernia was the cause of her pain.  Defendant's preoperative gross physical examination led him to disagree, i.e., he believed plaintiff probably did not have a hernia.  In any event, the surgery was intended to get visual confirmation of the problem and to fix it.

Although defendant verified during the January 2003 surgery that plaintiff did not in fact have a hernia, he proceeded to perform an ilioinguinal neurectomy, meaning he intentionally cut and removed her ilioinguinal nerve.  Defendant did this because, based on visual examination in the surgical field of the "prominent" nature of the ilioinguinal nerve, and based on his medical judgment, the groin pain plaintiff had been experiencing most likely was caused by a "sawing effect," which defendant explains as a rubbing back and forth of the nerve relative to the area of the groin in which it lies.

In this case, plaintiff claimed at trial that defendant was negligent in the performance of the above-described procedure, resulting in permanent disabling pain.  Alternatively, plaintiff claimed defendant did not obtain her informed consent to perform the neurectomy. Defendant contested both claims.  As earlier indicated, the jury returned a defense verdict.

Plaintiff now seeks a new trial on the following alternative bases:

1.     The court erred in denying plaintiff's motion in limine to exclude all evidence of the worker's compensation claim made with regard to the injury suffered in October 2002.

2.     The court erred in denying plaintiff's motion in limine to exclude all evidence that she retained an attorney to file the worker's compensation claim, and in allowing defense counsel to intimate that plaintiff's medical treatment was affected by the intervention of her attorney.

3.     The court erred in denying plaintiff's motion in limine to exclude all evidence and arguments regarding so-called  "secondary gain," i.e., the personal injury case defense theory that some plaintiffs, including Ms. Watson, may not be very motivated to get well because of how it might adversely impact pending worker's compensation and related civil litigation.

4.     The court erred in denying plaintiff's motion in limine to exclude certain testimony by one of her own pain management specialists, Shavonne Danner, M.D., regarding the possibility that plaintiff's current low pain tolerance is the result of hyperalgesia.

5.     The court erred in overruling plaintiff's challenges for cause of certain jurors.

6. The court erred in allowing into evidence a certain "pain diagram" that plaintiff filled out during an independent medical examination commissioned by the defense.

7. The court erred in overruling plaintiff's objections to a certain line of questioning during defendant's cross-examination of plaintiff.

8. The court erred in overruling plaintiff's objections to certain testimony by a treating physician, Mark Epstein, M.D.

9. The court erred in overruling plaintiff's objections to a line of questioning during the defense's cross-examination of an economist, Kurt Kruger, Ph.D.

10. The court erred in instructing the jury as to the applicable law.

11. The verdict was against the greater weight of the evidence.

12. The aggregate effect of each of the foregoing errors unfairly prejudiced plaintiff denying her a fair trial.

## II.   Analysis and Discussion

Conspicuously, plaintiff's motion and supporting memorandum fail to mention the heavy procedural burden she bears in connection with the instant motion. Of course, motions for new trial, which are committed to the sound discretion of the trial court,[2] are generally regarded with disfavor and should only be granted with great caution.[3] "A party seeking to set aside a jury verdict must demonstrate trial errors which constitute prejudicial error, or that

---

[2] *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 556 (1984); *Hind v. Gen. Motors Corp.*, 988 F.2d 1039, 1046 (10th Cir. 1993).

[3] *Franklin v. Thompson*, 981 F.2d 1168, 1171 (10th Cir. 1992).

the verdict is not based on substantial evidence."[4]   Despite plaintiff's above-described omission, the court will analyze each of her twelve post-trial arguments in light of these general procedural standards, and will also address the specific legal principles governing those arguments.

A.      Worker's Compensation

The evidence at trial was uncontroverted that plaintiff had suffered from interstitial cystitis since early 2002.  This medical condition is also known as painful bladder syndrome. It manifests itself in general discomfort in the bladder and the surrounding pelvic region. Plaintiff suffered the previously mentioned work-related injury on October 12, 2002, while carrying a heavily laden serving tray at the restaurant where she was employed as a waitress. This caused plaintiff acute pain in the groin.  After various preoperative consultations with defendant and others, defendant performed the subject surgery on January 27, 2003.

When this case reached trial in the fall of 2006, there was little disagreement between the parties about the fact that plaintiff has some fairly serious physical limitations, that she is in considerable pain, and that her general overall condition is much worse than a couple of years before defendant performed surgery on her.  As a practical matter, the trial of this case centered on two basic issues:  (1) whether defendant's surgical procedure deviated from the applicable standard of care; and (2) whether and to what extent plaintiff's current

---

[4] *White v. Conoco, Inc.*, 710 F.2d 1442, 1443 (10th Cir. 1983).

problems are due to the surgery, as opposed to the above-described problems that had manifested themselves before defendant did the surgery.

It is essentially uncontroverted that defendant never would have met plaintiff but for her worker's compensation claim.  Yet, plaintiff argues the court should have kept from the jury all evidence of the worker's compensation claim.  Specifically, pursuant to the collateral source rule, plaintiff argues the admission of such evidence was improper as a matter of law, and further that it was highly prejudicial because it allowed jurors to speculate that plaintiff was in effect seeking a "double recovery" for her injuries.  For the reasons explained below, the court disagrees.

The collateral source rule provides that "benefits received by the plaintiff from a source wholly independent of and collateral to the wrongdoer will not diminish the damages otherwise recoverable from the wrongdoer."[5]  Under this rule, an injured party can "recover full compensatory damages from a tortfeasor irrespective of the payment of any element of those damages by a source independent of the tortfeasor."[6]  However, the collateral source rule is *not* an absolute one.  That is, evidence of benefits received from a collateral source is admissible when "such evidence clearly carries probative value on an issue not inherently related to measurement of damages."[7]

---

[5] *Gregory v. Carey*, 791 P.2d 1329, 1333  (Kan. 1990) (citation omitted).

[6] *Wentling v. Med. Anesthesia Servs., P.A.*, 701 P.2d 939, 949 (Kan. 1985) (citation omitted).

[7] *Id.* (citation omitted).

As the Tenth Circuit Court of Appeals recognized in *Higgins v. Martin Marietta Corp.*,[8] and as also was recognized by U.S. District Judge Kathryn H. Vratil of the District of Kansas in *Withrow v. Cornwell*,[9] evidence of a collateral source may be admissible to attack a plaintiff's credibility as to causation, *provided* the jury is given proper limiting instructions.  In *Higgins*, the plaintiffs brought a tort claim seeking damages for exposure to toxic gas which escaped during the refueling of a missile silo.  During cross-examination of one of the plaintiffs at trial, a letter written by one of his treating physicians was read into the record.  The letter stated that an aspirated piece of popcorn, rather than the exposure to the toxic gas, could have caused the plaintiff's injuries, and suggested the plaintiff was "obviously trying to get this job related. . . ."[10]  On appeal, it was argued that admission of the above-described evidence was an impermissible reference to a collateral source.  The Tenth Circuit rejected this argument, ruling the statements "did not refer to a collateral source *per se*," but instead were introduced "for the purpose of showing [the plaintiff] did not contend that he was exposed to the nitrogen tetroxide until he decided to file a workman's compensation claim fourteen months after the accident . . .."  The Tenth Circuit held that the evidence went to the plaintiff's credibility and was therefore admissible.[11]  The appellate court also noted the trial court's cautionary instruction ordering the jury to

---

[8] 752 F.2d 492, 497-98 (10th Cir. 1985).

[9] 845 F. Supp. 784, 787 (D. Kan. 1994).

[10] 752 F.2d at 497.

[11] *Id.*

disregard the statements for purposes of assessing damages cured any potential prejudice to the plaintiffs.[12]

In the case at bar, as part of a detailed, twelve-page limine order filed on September 18, 2006 (doc. 129), the court addressed this same issue and denied plaintiff's pretrial motion to exclude all evidence of her worker's compensation claim.  Following the rationale set forth in *Higgins* and in *Withrow*, the court ruled it would allow evidence of plaintiff's worker's compensation claim, but *only* for the limited purpose of aiding the jury in assessing plaintiff's credibility as to her claim that defendant's surgery caused her disability. Accordingly, during trial, the court instructed the jury as follows:

> Evidence has been admitted in this case concerning a Missouri worker's compensation claim filed by plaintiff.  This evidence has been admitted for a limited purpose only.  That is, the court allowed this evidence to be admitted solely for your consideration on the issue of plaintiff's credibility concerning whether or not she made inconsistent claims at different times regarding the cause of her injuries.  This evidence may not be considered by you for any other purpose.

Jury Instruction No. 23 (doc. 140, p. 26).  The court further instructed the jury:

> In determining the appropriate amount of damages in this case, if any, you must not be concerned about whether or not any of plaintiff's claimed damages (including medical treatment, medications, or other economic damages) have been or will be

---

[12] *Id.* at 497-98.  *See also Withrow v. Cornwell*, 845 F. Supp. at 787 (D. Kan. 1994) (admission of plaintiff's unredacted social security disability applications was not evidence of collateral source benefits because the applications were "extremely relevant to the credibility of plaintiff's claim that she was not totally disabled until the accident in question," and because "the jury was not informed whether plaintiff actually received any payments.").

paid for by any other source.  These are matters solely for the court's determination at a later time.

Jury Instruction No. 25 (doc. 140, p. 28).

In light of the foregoing, the court stands by its pretrial ruling that the worker's compensation evidence was offered by defendant for a proper purpose and should not have been excluded under the collateral source rule.  Further, the court is wholly unpersuaded the probative value of this evidence was substantially outweighed by the danger of unfair prejudice, as contemplated by Fed. R. Evid. 403.  Any prejudice plaintiff may have suffered was not unfair, and in any event was cured by the court's cautionary jury instructions.  Accordingly, plaintiff is not entitled to a new trial on account of the admission of evidence relating to her worker's compensation claim.

Along the same lines, plaintiff also argues the court should have excluded evidence that she retained an attorney to file her worker's compensation claim, and the court should have prevented defense counsel from intimating the intervention of an attorney affected plaintiff's medical treatment.  According to plaintiff, the court's admission of evidence that plaintiff accessed the legal system to assert her rights in her worker's compensation action was impermissible and unfairly prejudicial.  Plaintiff specifically takes issue with the court's admission of a June 27, 2003-letter from plaintiff's counsel to defendant requesting copies of her medical records for use in her worker's compensation action.[13]

---

[13] In their papers, the parties refer to this letter as Exhibit 444, but it is actually contained in Exhibit 412.

The court acknowledges, as a general proposition, access to the legal system is a fundamental right that should not be discouraged.  But it does not follow that the exhibit in question, or any other evidence in this case that plaintiff hired an attorney to pursue a worker's compensation claim, was unfairly prejudicial.  Defendant merely introduced this evidence in an attempt to establish a timeline as to when plaintiff was claiming injury due to a work-related accident, as contrasted with when she was claiming injury due to defendant's surgery.  This goes *directly* to an essential element of plaintiff's negligence claim, to wit, causation, as discussed above.  Defendant's questions of witnesses as to whether they were aware plaintiff had hired an attorney or was engaged in litigation were aimed at the secondary gain theory discussed in section II(B) below.

Plaintiff argues the exhibit in question was inadmissible because it was signed by counsel and not by plaintiff.  This argument is untenable.  As earlier indicated, the letter is simply a request for medical records by counsel in relation to plaintiff's worker's compensation claim.  Incidentally, the lawyer who signed that letter also has represented plaintiff throughout this malpractice litigation.  Thus there can be no reasonable suggestion that the letter was unauthorized.  Regardless of whether the letter was signed by plaintiff or her lawyer, it is probative of the contention that she was pursuing a worker's compensation claim for her October 2002 injuries at work during the summer *after* defendant's January 2003 surgery.  This letter, therefore, was *highly* relevant to plaintiff's arguably inconsistent claim that defendant's surgery actually was the cause of her injuries.  The probative value of the letter most definitely was not outweighed by the danger of unfair prejudice.  Again,

Jury Instruction No. 23 served to cure any prejudice that plaintiff may have suffered by the admission of this evidence.

B.      Secondary Gain

Plaintiff argues the court should have excluded as unfairly prejudicial all evidence and arguments that plaintiff was not motivated to get well because of secondary gain. Specifically, plaintiff asserts she was deprived a fair trial because defendant did not present any expert testimony that plaintiff herself was unmotivated to get well due to secondary gain. Instead, plaintiff points out, defendant simply asked several medical witnesses about the secondary gain theory in general.

Plaintiff has not cited any authority for the hypothesis that a competent medical expert must make a specific diagnosis or finding of secondary gain before the defendant in a tort case may ask any witness about the possibility that said medically recognized phenomenon is playing a role in the plaintiff's recovery from an injury or surgery.  In the case at bar, the court believes defense counsel was clearly within his prerogative to ask plaintiff's various treating physicians whether secondary gain was playing any kind of role in plaintiff's situation, given the types of damages plaintiff is seeking to recover in this litigation.

In the above-described limine order denying plaintiff's pretrial motion on this point (doc. 129), the court cited the decision of U.S. District Judge John W. Lungstrum in *Beller v. Saari*,[14] and held that evidence regarding secondary gain, as a *possible* cause of plaintiff's

---

[14] No. 92-2234, 1994 WL 608593, at *2 (D. Kan. Oct. 27, 1994).

pain and disability, was relevant. The court noted, although evidence of secondary gain may reflect unfavorably on plaintiff's motivation, its probative value was not substantially outweighed by the risk of unfair prejudice.

In her post-trial submissions, plaintiff continues to rely on *Yingling v. Hartwig*, 925 S.W.2d 952 (Mo. Ct. App. 1996), and *Carlyle v. Lai*, 783 S.W.2d 925 (Mo. Ct. App. 1989), for the proposition that general statements about secondary gain motivations are irrelevant to prove plaintiff in particular was motivated by secondary gain. Although the Missouri courts in those cases determined that generalized statements about secondary gain and plaintiffs' rights to access the legal system were prejudicial, this federal judge respectfully declines to apply that reasoning to the case at bar. As earlier indicated, this case is controlled by Kansas substantive law and hence determinations made by the Missouri Court of Appeals are not entitled to much precedential weight. Judge Lungstrum's decision in *Beller* is more persuasive and indicative of Kansas law on this point. Therefore, the court stands by its limine ruling that secondary gain evidence is relevant because it is consistent with defendant's overall theory of the case.

Based on the evidence presented and arguments made at trial, the court remains unpersuaded that plaintiff suffered any unfair prejudice due to the court allowing defendant to explore his secondary gain theory at trial. Whether to believe testimony that secondary gain actually played a role in plaintiff's situation was a question properly left to the jury, especially since none of the witnesses who were asked about this medical phenomenon

seriously disputed that it can play a role in how well a patient recovers from an injury or surgery.

C.      Hyperalgesia

Plaintiff argues the court should have excluded as irrelevant and unfairly prejudicial certain testimony from one of her treating physicians.  Specifically, Shavonne Danner, M.D., a pain management specialist, testified plaintiff may be suffering from hyperalgesia, an opioid-induced syndrome that creates a lower pain tolerance and in turn more discomfort for the patient.  Plaintiff claims, because neither Dr. Danner nor any other physician actually ever formulated a definite diagnosis that plaintiff is hyperalgesic, Dr. Danner's testimony was irrelevant and likely confused the jury.  Plaintiff asserts the testimony was prejudicial because the implicit theory was that plaintiff was taking too many opioids, which was causing her pain.  Plaintiff further asserts that, even if she had been diagnosed with hyperalgesia, it could have easily been brought on by the pain medications she had to take to cope with the very injuries caused by defendant's surgery.

As stated in the above-described limine order (doc. 129), the court has ruled that testimony as to whether hyperalgesia was a cause or contributor to plaintiff's current condition is relevant.  Although such testimony may not reflect favorably on plaintiff's claims, the court finds it did not unfairly prejudice plaintiff or confuse the jury.  As opposed to admissibility, plaintiff's arguments as to this issue go more to the weight to be accorded certain testimony, which was properly a question for the jury.

D.      Jury Challenges for Cause

Plaintiff claims she was unfairly prejudiced and denied a fair trial by the court's failure to strike for cause Juror No. 2 (Lori K. Samazin), Juror No. 11 (Janna S. Smith), Juror No. 16 (Wanda L. Hein), and Juror No. 17 (Barbara Kay Leatherman).  Plaintiff argues that during voir dire these jurors unequivocally stated they would not be able to consider the pain and suffering aspect of plaintiff's claim for damages.  For the reasons explained below, except possibly with regard to Ms. Samazin, plaintiff's arguments strain credulity.

"A refusal to strike a juror for cause is committed to the discretion of the district court."[15]  "'Generally, a court must grant a challenge for cause if the prospective juror's actual prejudice or bias is shown.'"[16]  "Impermissible bias exists if the juror had such a fixed opinion that he or she could not judge impartially."[17]  "Jurors are sufficiently impartial if they can set aside any preconceived opinions regarding the outcome of the case and render a verdict based on the evidence presented in court."[18]

Even assuming for the sake of discussion that the court should have sustained any of plaintiff's for cause objections to these four jurors on the issue of whether they could fairly

---

[15] *Treaster v. Healthsouth Corp.*, No. 05-2061, 2006 WL 3316727, at *2 (D. Kan. Nov. 14, 2006) (Lungstrum, J.) (citing *Vasey v. Martin Marietta Corp.*, 29 F.3d 1460, 1467 (10th Cir. 1994)).

[16] *Id.*

[17] *Id.* (citing *Hale v. Gibson*, 227 F.3d 1298, 1319 (10th Cir. 2000)).

[18] *Id.* (citing *Goss v. Nelson*, 439 F.3d 621, 627 (10th Cir. 2006); *Robinson v. Missouri Pac. R.R. Co.*, 16 F.3d 1083, 1091 (10th Cir. 1994)).

assess plaintiff's claim for pain and suffering damages, as a practical matter it is difficult to see how plaintiff could have been materially prejudiced. That is, as defendant correctly notes in his memorandum in opposition to the instant motion, plaintiff ignores the fact that the jury in this case never even reached the issue of damages, because the verdict plainly reflects the jury found in defendant's favor on the threshold issue of liability (*see* doc. 142, p. 1). Moreover, the court is strongly inclined to believe that if plaintiff and her able trial lawyers genuinely believed these particular jurors were so objectionable, given that only one other challenge for cause by plaintiff was denied,[19] peremptory challenges would have been exercised by plaintiff to strike the above-named jurors after the challenges for cause to them were unsuccessful. But, the record reflects that *only* Ms. Samazin was peremptorily challenged by plaintiff. In any event, the court will address plaintiff's arguments with regard to each of the four potential jurors named in the instant motion.

In response to preliminary questions posed by plaintiff's counsel during voir dire, Ms. Samazin testified that her sister-in-law had been involved in a personal injury suit and her experience with respect to that case *could* affect her ability to serve as a juror in the instant case. She also stated during that portion of voir dire that it would be difficult for her to include damages for pain and suffering in a verdict if she did not have a formula by which to calculate such damages. In response to later questions posed by defense counsel,

---

[19] Plaintiff challenged for cause Juror No. 5 (Stephanie Folkers), but has not addressed in the instant motion the court's denial of this challenge. Accordingly, plaintiff has waived any objection to this ruling. The court also notes that plaintiff did not exercise a peremptory challenge to Ms. Folkers.

Ms. Samazin stated that, although she did not know all the facts of the case and preferred to deal in "black and white" rather than "gray," she was willing to listen to what the attorneys presented and to the judge's instructions.  At the conclusion of questioning by the parties' respective attorneys, because of the court's concern that Ms. Samazin *might* have difficulty being impartial, the court stated:

> Let me ask just a couple of follow-up questions, because I want to make sure the jury is properly oriented with respect to this issue of so-called noneconomic or pain-and-suffering-type damages.  I guess first, is there anybody among the 17 now seated toward the front of the courtroom who cannot unequivocally promise that they will listen with an open mind to what both parties present by way of evidence, mindful they're going to disagree about what a lot of those facts are?  Is there anybody who has problems with that notion? [No response from the panel.]
>
> Next, I will tell you, and the lawyers have touched upon this before, that first of all, pain and suffering, assuming that liability is established, is compensable in Kansas.  And that's nonnegotiable.  So, we've heard a lot of questions from Mr. Berrigan [plaintiff's lead attorney] about what you think about that, and I think those are appropriate questions during the jury selection process, to find out what you think about those issues.
>
> But my question at this point is whether anybody has any difficulty with the notion that they must and will have to follow whatever instructions I give you on the law about anything that applies in this case, whether it be pain and suffering, noneconomic damages or anything else.  Because if somebody's got a hidden agenda in this case, if they want to re-write Kansas law in this case, the lawyers and I want to ferret that out now.
>
> So having been advised that Kansas law does allow for noneconomic damages to be compensated in a reasonable amount as determined by the jury, is there anybody here that has difficulty with the fact that they're going to have to make that decision, assuming they find liability?  Ms. Samazin?[20]

---

[20] Doc. 157, pp. 128:6-129:14.

Ms. Samazin responded that "I didn't know it was required.  If I'd have known that was part of the law, I might have a different opinion."[21]

The court then went on to state during voir dire:

> It's not required that the jury find there's pain and suffering, but I suspect you will hear evidence in this case by Ms. Watson and others that she has pain and suffering.  And the question, as a practical matter, is this: Assuming Mr. Berrigan and Mr. Dameron [plaintiff's co-counsel] prove to your satisfaction that Dr. Taylor was negligent and further assuming that the evidence bears out in your view that there was pain and suffering, can you follow the Court's instructions and make an award, yes or no?  Does anyone have trouble with that assignment if you get to that point?  Nobody's raised their hand.[22]

Although Ms. Samazin did exhibit some *initial* hesitation with respect to her ability to award damages for pain and suffering, the record is crystal clear that she did not have such a fixed opinion that she could not judge impartially.  Her response, or lack thereof when appropriate, to the court's questions and comments as recited above show Ms. Samazin would have been able to set aside any preconceived notions she may have had about the element of pain and suffering and render a verdict based on the evidence presented at trial.[23]

---

[21] *Id.* at p. 129:15-17.

[22] *Id.* at p. 129:18-130:4.

[23] See *Treaster v. Healthsouth Corp.*, No. 05-2061, 2006 WL 3316727, at *2 (D. Kan. Nov. 14, 2006) (Lungstrum, J.) (citing *Miller v. Francis*, 269 F.3d 609, 618-19 (6th Cir. 2001)) ("noting venire members commonly couch their responses to questions concerning bias in terms of 'I think' and such language cannot necessarily be construed as equivocation but rather must be viewed in context with other statements made by the juror during voir dire").

Much like Ms. Samazin, Ms. Smith also said during plaintiff's counsel's initial questioning that it would be difficult for her to assign damages for pain and suffering if she did not have a formula by which to calculate those damages.  Later, however, Ms. Smith acknowledged without hesitation that pain and suffering would be an appropriate part of a damage award, *provided* that someone was found to have caused pain and suffering as a result of their negligence.[24]  Like Ms. Samazin, Ms. Smith stated in response to defense counsel's questions that she would be able to follow the court's instructions in this case.  In light of this and the court's comments discussed above, the court finds Ms. Smith was sufficiently impartial to serve as a juror, which she did.

Ms. Hein also initially stated she would be uncomfortable awarding damages for pain and suffering.  However, she stated during defense counsel's questioning that she would be able to follow the court's instructions, apply them to the evidence, and compute damages.  As with Ms. Samazin and Ms. Smith, the court finds Ms. Hein was not impermissibly unbiased.  Moreover, plaintiff's motion for new trial completely ignores a very significant point with regard to Ms. Hein.  Under a procedure agreed to in advance by the parties and the court, Ms. Hein served as alternate juror, and she was excused at the end of the case *before* the jury deliberated.  Therefore, Ms. Hein obviously had *no* effect on the ultimate defense verdict.

---

[24] Doc. 157 , p. 119:10-19.

18

And finally, as to Ms. Leatherman, although plaintiff's papers implicitly assert this potential juror was challenged for cause, the record reflects that she was not. The court, of course, cannot read the minds of trial counsel. Thus, it is a bit of a stretch for plaintiff to argue post-trial that Ms. Leatherman should have been stricken for cause. Regardless, any challenge plaintiff may have had with regard to Ms. Leatherman was waived because it was not timely asserted during trial. Ultimately, *defendant* used his fourth of four allowed peremptory challenges to strike Ms. Leatherman. Nonetheless, the court finds she was sufficiently impartial to serve on the jury in this case if she had been required to serve.

Plaintiff states in her post-trial memorandum that the court's questions of the jury panel during voir dire "encouraged jurors to abandon their previous opinions in the face of judicial derision." On its face, this is an exceptionally strong assertion. The court, of course, wholeheartedly agrees with plaintiff that, *if* a trial judge actually did encourage members of a jury panel to abandon their previous opinions in the face of judicial derision, that would be highly prejudicial and sufficient to warrant a new trial. But still, the court was unsure of whether the above-described assertion in plaintiff's papers was a well-considered argument or just careless  hyperbole, and therefore the court requested the reporter prepare and file a complete transcript of the jury selection process in this case (*see* doc. 157). Although perhaps much more could be said, it suffices here to say that the court *strongly* disagrees with plaintiff's assertion. More directly, having carefully reviewed the record, the court is firmly convinced its comments to and questions of the jury panel during voir dire were

appropriately direct, yet neutral, to fully explore and cure any potential prejudice against plaintiff on the issue of pain and suffering.

Voir dire is a critical stage of trial.  Lawyers and judges who play roles in selecting (or, more to point, de-selecting) individuals to serve on civil juries always have needed to be prepared to discuss with potential jurors their sometimes ill-informed but nonetheless strongly voiced opinions about a variety of "hot button" subjects, including but not certainly limited to what some call tort reform.  This process, especially during the past few years, has been made even more challenging as a result of the well-financed, tightly coordinated, and heavily advertised efforts by various competing interest groups.  Although plaintiff's post-trial memorandum takes some gratuitous pot shots at the themes promoted by elements of the civil litigation defense bar (e.g., secondary gain), the court respectfully submits that plaintiff is incorrect if she is suggesting such efforts have been restricted to the defense bar. There can be no serious dispute these efforts also have included national and various state associations of lawyers who almost exclusively represent individual plaintiffs in personal injury cases.  Of course, a myriad of national and state associations of lawyers who almost exclusively defend doctors in medical malpractice cases, large corporations in product liability cases, and other insured entities do largely the same thing.  And, to differing degrees, both of the major national political parties in the United States have gotten in the fray, in no small measure financed by the above-described special interest groups, which naturally have the First Amendment right to advocate their point of view in the democratic marketplace of ideas.

In view of the foregoing, it should have come as no surprise to Ms. Watson's experienced trial counsel that some members of the jury panel expressed some initial resistance to the pain and suffering component of this case.  This situation is not materially different from the one often confronted in medical cases where a potential juror initially voices his opinion  that some surgeons tend to be cold, arrogant, and aloof  – which happen to be complaints voiced by Ms. Watson and her husband with regard to Dr. Taylor.  In any event, under the strained logic implicitly advocated here on plaintiff's behalf, the court would essentially have to accept such ill-informed, initially voiced views of jurors at face value, and further would have to dispense with any meaningful effort through dialogue to see if the juror could be fair to both parties after being given more insight on the applicable law and the anticipated evidence.

Simply stated, the court believes no litigant holds an absolute veto when dealing with such jurors.  The ultimate ability of such jurors to serve on a case is completely controlled by what they might initially say during voir dire irrespective of their later answers.

During the voir dire proceedings in this case, both parties' lawyers had ample opportunity to fully explore all of the issues they deemed pertinent.  Especially in light of some of the initial statements made by the jurors in question, the court had an obligation to step in and briefly explain the applicable law and inquire whether the jurors in question could follow that law.  And that is precisely what the court did here.

To recap, the court does not believe there is anything in the record to support plaintiff's bold assertion that the court "encouraged jurors to abandon their previous opinions

in the face of judicial derision." The record, and in particular the responses to the court's questions and to those posed by counsel, shows the panel members at issue were not impermissibly prejudiced against plaintiff with regard to her claim for pain and suffering damages.

E.     Exhibit 440

Exhibit 440 is a one-page "pain diagram" in plaintiff's own handwriting. It was included in a report written by Dr. Chris Fevurly, who was retained to perform an independent medical examination of plaintiff on behalf of defendant. As it turned out, Dr. Fevurly was not called by the defense to testify at trial. However, during plaintiff's cross-examination by defense counsel, over objection, plaintiff was asked questions about Exhibit 440. Plaintiff claims this diagram should have been excluded at trial because it was not authenticated, was not a medical record, and was unfairly prejudicial.

Exhibit 440 is simply a preprinted form with outlines of human figures. But as earlier indicated, it bears plaintiff's own handwriting. Therefore, the court has no difficulty concluding she was competent to authenticate the document and to testify about what she meant by her markings.

The court's notes indicated that plaintiff's only stated objection to this diagram at trial was the fact it was part of Dr. Fevurly's report and thus should not be admitted. Plaintiff did not object based on grounds of lack of authentication or unfair prejudice. Thus, these two

new objections must be deemed waived by plaintiff for lack of a contemporaneous objection.[25]

Plaintiff's objection that the diagram was not a medical record, but was a *part* of Dr. Fevurly's report, has no merit.  Defendant never offered Dr. Fevurly's entire narrative report into evidence.  Although the diagram was used by Dr. Fevurly in making this findings and formulating his opinions, the diagram itself contained *none* of Dr. Fevurly's findings, conclusions, or opinions.

Moreover, as earlier indicated, the diagram was made by plaintiff herself – not Dr. Fevurly.  Thus, the diagram itself is an admission by a party opponent, unlike Dr. Fevurly's report, and is not considered hearsay.  *See* Fed. R. Evid. 801(d)(2)(A).

Finally, it is ludicrous for plaintiff to suggest this drawing was unfairly prejudicial because it suggested her pain was unrelated to defendant's surgery, in that she filled out a similar diagram before her ilioinguinal nerve was removed.  That is precisely the point of defendant's entire defense, i.e., that plaintiff was complaining about the same pain both before and after defendant's surgery.  Of course, all effective evidence is prejudicial in that limited sense of the word.  However, within the governing framework of Fed. R. Evid. 403, the drawing was certainly not "unfairly" prejudicial.  Plaintiff had more than ample opportunity to explain the diagram to the jury.

---

[25] *See, e.g., Chavez v. New Mexico*, 456 F.2d 1072, 1072-73 (10th Cir. 1972) (failure to make proper and timely objection at trial constitutes waiver).

F.      Cross-Examination of Plaintiff

Plaintiff argues the court erred in overruling her objections to certain questions by defense counsel during the cross-examination of plaintiff.  The questions concerned notes in defendant's medical charts on plaintiff, and specifically are from a medical examination of plaintiff after the January 2003 surgery.   Plaintiff claims the following questions improperly elicited speculative testimony:  "Do you think Dr. Taylor was making notes for you or for your medical record?"  "Why would Dr. Taylor write down that she was doing well?"  "Why would Dr. Taylor write down, 'She is happy?'"  Plaintiff responded to these questions that she did not recall defendant taking notes and that she did not know why defendant would have recorded that plaintiff was doing well.

The court finds plaintiff was able to answer defense counsel's questions without speculation.  She was claiming at trial she was in pain during this particular medical examination.  Defense counsel was simply using defendant's notes from that examination to cross-examine plaintiff on that point.  More importantly, the court finds that, even if this line of questioning did call for some very limited speculation on plaintiff's part, her testimony did not unfairly prejudice her.

Plaintiff also takes issue with this question:  "Were you thinking about bringing a lawsuit against Dr. Taylor at the time that you saw him?"  This question does not call for speculation.  It goes directly to the secondary gain issue which, as stated above, defendant was properly allowed to explore.

G.      Dr. Epstein's Testimony

Plaintiff called Mark Epstein, M.D., a subsequent treating physician, who testified by deposition (*see* doc. 132, Exhibit F).  Plaintiff argues the court should have excluded as irrelevant those portions of Dr. Epstein's testimony designated by defendant concerning Dr. Epstein's particular practice in obtaining informed consent.

Dr. Epstein performed surgery on plaintiff in June 2003, several months after defendant's surgery.  The court agrees with defendant that this testimony was relevant as to the risks associated with Dr. Epstein's surgery and whether it was a cause or contributor to plaintiff's current symptoms.

H.      Cross-Examination of Kurt Kruger

Plaintiff asserts the court should have sustained plaintiff's objections to defense counsel's questioning of her economist expert, Kurt Kruger, Ph.D., specifically, as to whether he was making assumptions that plaintiff was actually paying the drug costs of the medicine she was receiving when he calculated her future costs for prescription medicine.  Plaintiff claims these questions violated the collateral source rule and were unfairly prejudicial.

As set forth above, the collateral source rule provides that "benefits received by the plaintiff from a source wholly independent of and collateral to the wrongdoer will not diminish the damages otherwise recoverable from the wrongdoer.[26]  The court disagrees with

_____

[26] *Gregory v. Carey*, 791 P. 2d 1329, 1333 (Kan. 1990) (citation omitted).

plaintiff that allowing defense counsel to inquire as to the basis for her claim for prescription medications violated this rule.  Further, Jury Instruction No. 25, which was discussed previously in connection with plaintiff's worker's compensation claim, was sufficient to guard against any prejudice plaintiff may have suffered from this line of questioning.

I.    Jury Instructions

Plaintiff claims the court erred in giving Jury Instruction Nos. 12 and 15, and in declining to give one of plaintiff's proposed instructions.

"The decision whether to give or exclude a particular jury instruction is committed to the sound discretion of the trial court."[27]  "In reviewing jury instructions, the court must determine if the instructions properly state the law and provide the jury with ample understanding of the issues and the standards applicable."[28]  "The instructions must cover the issues presented by the evidence and accurately state law."[29]  "A new trial is warranted only when a failure to give an instruction is prejudicial in view of the entire record."[30]

---

[27] *Audiotext Comm. Network, Inc. v. US Telecom, Inc.*, No. 94-2395, 1996 WL 568839, at *5 (D. Kan. Sept. 4, 1996) (VanBebber, J.) (citing *City of Wichita v. United States Gypsum Co.*, 72 F.3d 1491, 1495 (10th Cir. 1996)).

[28] *Crumpacker v. State of Kansas*, No. 00-4044, 2004 WL 3186196, at *3 (D. Kan. Oct. 6, 2004) (Rogers, J.) (citing *Big Horn Coal Co. v. Commonwealth Edison Co.*, 852 F.2d 1259, 1271 (10th Cir. 1988)); *see also Audiotext*, 1996 WL 568839, at *5 (citing *Gomez v. Martin Marietta Corp.*, 50 F.3d 1511, 1517 (10th Cir. 1995)).

[29] *Crumpacker*, 2004 WL 3186196, at *3 (citing *United States v. Davis*, 953 F.2d 1482, 1492 (10th Cir. 1992)).

[30] *Id.* (citing *United States v. Martin*, 18 F.3d 1515, 1519 (10th Cir. 1994)).

1.     P.I.K. Civil 3d 171.04

Relying on a Kansas pattern instruction, plaintiff proposed the following instruction: "If plaintiff sustained personal injury as a result of defendant's fault, then plaintiff may recover damages from defendant for any additional harm which resulted from the efforts of other treating physicians to render aid to plaintiff."[31]   Specifically, plaintiff asserts that, without this instruction, the jury could have easily believed defendant was negligent, but not liable, because they believed his acts or omissions caused minor harm compared to the harm caused by subsequent treating physicians.  The court disagrees.

The court declined to give this proposed instruction at trial.  The court explained its basic rationale to the parties and counsel during the instructional conference.  Specifically, the court reasoned that giving the instruction would confuse the jury, because this case was not a classic rendering aid case.  Just as importantly, the court explained that plaintiff's proposed instruction indicated a marked departure from the theories she actually pleaded and preserved in the final pretrial order.  Further, the court concluded that plaintiff would suffer no prejudice from the court's declination to give this instruction in light of the other instructions and defendant's agreement to allow plaintiff to argue without objection that she should be compensated for pain and suffering associated with subsequent treating physicians.

---

[31] Doc. 136.  Plaintiff suggested that this instruction could be given as stated, or with the addition of "so long as those efforts were not performed in a negligent manner" at the end of the sentence; the additional language is included in the pattern instruction.

Upon review of the instructions as a whole, the court finds they properly stated the law and gave the jury sufficient information as to the standards to be applied in light of the evidence presented at trial.  Specifically, Jury Instruction Nos. 12 and 20 make clear plaintiff was entitled to recover damages in this case if the jury found either a lack of informed consent *or* that plaintiff sustained injuries due to defendant's negligence.  *Nothing* in the court's instructions can *reasonably* be construed as indicating that plaintiff was not entitled to recover if the jury believed plaintiff's injuries were caused by both defendant and subsequent treating physicians.

As a practical matter, for the above-described instruction to have any applicability, the jury would have had to first find defendant was negligent.  But, of course, the jury found defendant was not negligent.  There is nothing in the record from which it can be reasonably inferred that the jury was confused or misled by the absence of this instruction.  The court agrees with defendant that, if the jury had been confused as suggested by plaintiff, then the jury probably would have answered the first question of the verdict in the affirmative and proceeded to award plaintiff no damages, or significantly reduced damages.  But neither happened.

Defendant correctly points out in his post-trial memorandum that at no time before, during, or even after trial has plaintiff alleged or even allowed for the possibility that her alleged injuries were or could have been caused or made worse by the medical treatment she received following defendant's surgery.  Yet, plaintiff insists on this instruction.  The bottom-line is that this instruction is not consistent with plaintiff's own pleaded theories of

recovery.  Nor is the instruction consistent with defendant's theory.  Although it is true defendant's theory was that plaintiff's symptoms were caused or made worse by her subsequent medical treatment, defendant never conceded for a moment that he caused any of her symptoms, however minimal.  In other words, defendant's position was not that plaintiff's subsequent treating physicians caused plaintiff "additional harm" originally caused by defendant.  Rather, defendant was arguing lack of complete causation, i.e., that he did not cause any harm.  As the proposed instruction was not consistent with the evidence or either party's claims or defenses, plaintiff was not prejudiced by the court's failure to give the instruction.

In this case, the jury was more than adequately informed of the law and the nature of plaintiff's claims and was not, therefore, misled or confused.  For example, plaintiff's claims and theories of recovery were clearly outlined in Instruction Nos. 12 through 17.  In the event the jury found defendant at fault, the jury was clearly instructed on the law of damages as evidence by Instruction Nos. 20 and 21.  Consequently, P.I.K. 171.04 was not necessary under the circumstances.

2.      Jury Instruction No. 12

Plaintiff argues the court erred in including in Jury Instruction No. 12 (the instruction which merely summarized the parties' factual contentions), the following language: "Defendant also claims that the medical treatment she received after his surgery, additional pelvic surgery, numerous injections, and narcotic medications were a cause of some or all of plaintiff's alleged damages and injuries."  Plaintiff claims that, in conjunction with the

failure to give P.I.K. 171.04, the inclusion of this language in Instruction No. 12 misled the jury into believing defendant should not be held liable if they found any harm caused by him was de minimis compared to the harm resulting from subsequent doctors' efforts to help plaintiff.

As discussed above, the court respectfully disagrees. The jury instructions adequately cover the issues presented by the evidence and accurately state the law. Including defendant's factual contention that some or all of plaintiff's harm was caused by someone other than defendant simply is not equivalent to instructing the jury that they were to disregard defendant's negligence if they found other contributing factors. Inclusion of this language clearly was not prejudicial error.

3.      Jury Instruction No. 15

Plaintiff argues the court erred in giving Jury Instruction No. 15, which provides: "Consent to the performance of a medical procedure may be granted by the patient's conduct. That is, consent does not have to be in writing to be reasonable." Plaintiff argues, notably without citation to the record, that expert testimony established under the facts and circumstances of this case, the standard of care *required* that consent be in writing. Plaintiff asserts that because the issue in this case was whether plaintiff verbally consented, reference to conduct was misleading, confusing, and inapplicable.

Instruction No. 15 is an accurate statement of Kansas law.[32]  The court disagrees with plaintiff that expert testimony during trial conclusively established otherwise.  Further, the court disagrees with plaintiff that the consent issue in this case revolved *only* around whether she verbally consented.  Also at issue was whether she consented by her actions prior to the surgery and whether the written consent form that she did sign was adequate.  This instruction sufficiently informs each of these issues and its inclusion did not constitute prejudicial error.

J.      Sufficiency of the Evidence

Plaintiff argues the evidence was insufficient to support the defense verdict.  Specifically, she argues the verdict was against the greater weight of the evidence.

Of course, the court has the discretion to grant a new trial if a verdict appears to be against the weight of the evidence.[33]  But as a general rule the court must be mindful not to usurp the role of the jury, and must exercise its discretionary power only in exceptional circumstances where the verdict was clearly against the weight of the evidence.[34]  "A new

---

[32] *See, e.g.*, comment to P.I.K. Civil 3d 123.15 (citing *Charley v. Cameron*, 528 P.2d 1205, 1210 (Kan. 1974)).

[33] *Getter v. Wal-Mart Stores, Inc.*, 66 F.3d 1119, 1125 (10th Cir. 1995).  The trial judge assigned to this medical malpractice case has not shied away from, when appropriate, granting a new trial if the evidence truly is insufficient to support the jury's verdict – indeed, setting aside a *defense* liability verdict.  *See Rivera v. Rivera*, 216 F.R.D. 655, 656 (D. Kan. 2003) (O'Hara. M.J.) (intra-family sexual assault case).

[34] *Id.* at 1230-31.

trial is not warranted simply because the court would have reached a different verdict."[35]  A party seeking to set aside a jury verdict, "bear[s] the heavy burden of demonstrating that the verdict was clearly, decidedly, or overwhelmingly against the weight of the evidence."[36]  In considering plaintiff's motion for new trial, the court must view the evidence in the light most favorable to defendant.[37]

Plaintiff contends the evidence was overwhelming that defendant removed her ilioinguinal nerve without consent, that he did so without informing her of the risk of chronic pain, and that she suffered harm as a result.  Plaintiff asserts the evidence showed there was no reason to remove the nerve and its removal caused plaintiff to suffer from neuropathic pain.  The court disagrees.

There was sufficient evidence and testimony from which the jury could decide that defendant informed plaintiff of the risks of a neurectomy and plaintiff consented to the procedure.  This decision is supported by the testimony of defendant and his female office assistant who was present at key times, as well as by defendant's medical records.  There was also testimony from several doctors, including plaintiff's own treating physicians, sufficient

---

[35] *Hillman v. United States Postal Serv.*, 169 F. Supp. 2d 1218, 1222 (D. Kan. 2001) (Crow, J.) (citation omitted); *accord Boyce v. Bd. of Comm'rs*, 857 F. Supp. 794, 797 (D. Kan. 1994) (Saffels, J.).

[36] *Blanke v. Alexander*, 152 F.3d 1224, 1236 (10th Cir. 1998) (internal quotations and citation omitted).

[37] *Griffin v. Strong*, 983 F.2d 1544, 1546 (10th Cir. 1993).

to cast doubt on plaintiff's claim that defendant's surgery was the actual cause of her various current maladies.

A verdict for plaintiff also would have been well within the evidence, i.e., through their excellent retained counsel, *both* parties effectively presented expert testimony on the issues of whether defendant breached the standard of care, whether he failed to get plaintiff's informed consent, and what caused plaintiff's current symptoms. But, the court cannot say the jury's determination that plaintiff was not entitled to recover from defendant was clearly, decidedly, or overwhelmingly against the weight of the evidence.

Plaintiff called twenty-four witnesses during trial, most of whom in different ways addressed the damages component of plaintiff's case. At least from the vantage point of the trial judge, on the threshold issue of liability, putting aside the fairly predictable testimony of Ms. Watson and Dr. Taylor, this case really boiled down to their respective retained experts, namely, Marc Cooperman, M.D. for the plaintiff, and David C. Pauls, M.D. for the defense. Both of these physicians are well-credentialed and very experienced. Both were credible and persuasive witnesses. All that can be reasonably inferred here is that the defense verdict was the product of the jury finding Dr. Pauls to be more credible and persuasive than Dr. Cooperman.

Dr. Pauls candidly conceded at trial that personally he would not have elected to take the same course of action as defendant in performing the neurectomy based on what was discovered in the surgical field. Dr. Pauls further conceded that he was less than impressed by defendant's medical charting practices. But, on the key issue in this case, Dr. Pauls

testified *quite* persuasively to the effect that defendant's treatment of plaintiff fell within the standard of care for a general surgeon.  Viewing the trial record as a whole, the trial judge firmly believes the jury could properly decide to accept Dr. Pauls' opinion to make this critical (indeed, probably dispositive) factual determination.

K.      Aggregate Effect

Plaintiff claims the aggregate effect of all of the factors discussed above combined to unfairly prejudice plaintiff.  As the court finds that *none* of the above-described factors were prejudicial error, the aggregate effect of these factors obviously do not constitute unfair prejudice to plaintiff.

### III.   Order

In consideration of the foregoing,

IT IS HEREBY ORDERED that plaintiff's motion for new trial **(doc. 147)** is denied.

Dated this 6th day of March, 2007, at Kansas City, Kansas.


        s/ James P. O'Hara
        James P. O'Hara
        U.S. Magistrate Judge